UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CATARINO DE LA TORRE FERRETIZ,<br><br>Petitioner,<br><br>v.<br><br>JULIO HERNANDEZ et al.,[1]<br><br>Respondents. | CASE NO. 2:26-cv-02235-JHC<br><br>ORDER |

## I

## INTRODUCTION

This matter comes before the Court on Catarino De la Torre Ferretiz's Petition for Writ of Habeas Corpus. Dkt. # 1. The Court has considered the materials filed in support of and in opposition to the Petition, the rest of the record, and the governing law. Being fully advised, for the reasons below, the Court GRANTS the Petition.

[1] The full list of Respondents is: Julio Hernandez, Seattle Field Office Director, Immigration and Customs Enforcement and Removal Operations; Todd Lyons, Acting Director of U.S. Immigration and Customs Enforcement (ICE); Todd Blanche, Acting Attorney General of the United States; Bruce Scott, Warden, Northwest ICE Processing Center ("NWIPC"); ICE; Executive Office for Immigration Review; and the U.S. Department of Homeland Security.

## II

## BACKGROUND

Petitioner is a native and citizen of Mexico. *See* Dkt. # 10 ¶ 4. He first entered the United States in 1997, before returning to Mexico in 1998 and then traveling back to the United States after that. *Id.* ¶¶ 4–7. According to his A-File, Petitioner has no criminal history. Dkt. # 8-2 at 5.

On April 16, 2026, Border Patrol agents in Bonners Ferry, Idaho, stopped a vehicle containing Petitioner. Dkt. # 10 ¶ 8. After Petitioner stated that he was from Mexico, the agents arrested him. *Id.* The next day, the government served Petitioner with a notice to appear before an immigration judge in Tacoma, Washington, on May 19, 2026. *Id.* ¶ 9; *See also* Dkt. # 8-1 at 2 (notice). The government charged Petitioner with removability under Section 212(a)(6)(A)(i) and Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA).[2] Dkt. # 10 ¶ 9; Dkt. # 8-1 at 2. Petitioner was transferred to the NWIPC on April 21, 2026. *See* Dkt. # 10 ¶ 10.

On May 22, 2026, Petitioner filed a habeas petition in this District as part of a group, contending that the government's failure to provide him a bond hearing—on the ground that his detention was mandatory under 8 U.S.C. § 1225(b)—was unlawful. *See Villatoro-Hernandez v. Hernandez*, 2026 WL 1533054, at *1 (W.D. Wash. June 1, 2026) (Cartwright, J.). On June 1, the court granted the habeas petition, ruling that seven of the eight petitioners (including Petitioner De la Torre Ferretiz) were entitled to bond hearings within 14 days as members of the *Rodriguez Vazquez* class. *See id.* at *1–2 (citing *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297, 1336 (W.D. Wash. 2025).

[2] Habeas petitions and their associated briefing commonly refer to the sections of the INA as they appear in the enrolled bill and not by citation to the United States Code. The cited sections here are codified at 8 U.S.C. § 1182(a)(6)(A)(i) and 8 U.S.C. § 1182(a)(7)(A)(i)(I) respectively.

But on May 27, 2026, before Judge Cartwright granted relief on the *Villatoro-Hernandez* petition, Petitioner had a bond hearing before an immigration judge (IJ), Tammy L. Fitting, who, at the hearing, denied bond for lack of jurisdiction, citing *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). *See* Dkt. # 10 ¶ 13; *see also* Dkt. # 8-3 at 2 (record of IJ's decision concluding that she lacked jurisdiction to order bond). The IJ also ruled that, in the alternative, Petitioner's bond request should be denied because he is a flight risk. Dkt. # 10 ¶ 14; *see also* Dkt. # 8-3 at 3. Petitioner reserved his appeal to the Board of Immigration Appeals. Dkt. # 10 ¶ 14.

On June 18, 2026, weeks after both the initial bond denial and the decision granting Petitioner's habeas request in *Villatoro-Hernandez*, the IJ issued a written memorandum setting forth her reasons for denying Petitioner's bond. *See* Dkt. # 8-4 at 3–4. The memorandum sets out the standard for considering bond, provides the background of Petitioner's case, summarizes his biographical details and that of his 19-year-old son, and concludes that Petitioner "failed to meet his burden of proof that he is not a flight risk." *Id.* at 4. The government says that Petitioner did not request another bond hearing after the May 27 hearing or any other form of relief before the IJ. Dkt. # 10 ¶¶ 19, 21. In any event, Petitioner has appealed the IJ's decision to the Board of Immigration Appeals (BIA). *See* Dkt. # 1-6.

Petitioner has now filed a second habeas petition, contending that the IJ's decision denying him bond violates the Fifth Amendment's guarantee of due process and the bond hearing requirements of 8 U.S.C. § 1226(a). *See generally* Dkt. # 1. Petitioner remains detained at NWIPC. Dkt. # 10 ¶ 10.

## III
## DISCUSSION

Federal district courts have the authority to grant a writ of habeas corpus if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241 (a), (c). "The [habeas] petitioner carries the burden of proving by a preponderance of the evidence that [they are] entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004). That said, under the scheduling order used throughout this District, Respondents must show cause why the writ of habeas corpus should not be granted. *See* Dkt. # 2 at 1.

A. Abuse of the Writ

In their return memorandum, Respondents argue that the Court should dismiss the petition under the abuse of writ doctrine. *See* Dkt. # 7 at 3. The doctrine "generally forbids the reconsideration of claims that were or could have been raised in a prior habeas petition." *Alaimalo v. United States*, 645 F.3d 1042, 1049 (9th Cir. 2011) (citation modified). "Under this doctrine, 'a successive petition that raises identical grounds for relief as a prior petition must be dismissed unless the petitioner can show (1) cause for bringing a successive petition and that prejudice would result or (2) that a fundamental miscarriage of justice would result from failure to entertain the claim.'" *Eldridge v. Howard*, 70 F.4th 543, 551 (9th Cir. 2023) (citing *Alaimalo*, 645 F.3d at 1049)). To determine whether a petition is successive, the Court must "look to the substance of the claim . . . and decide whether the petition had a full and fair opportunity to raise the claim in the prior application." *Id.* at 552 (citation modified).

Here, the doctrine should not be applied because Petitioner's instant habeas petition advances separate claims from the first petition. The first petition, filed on May 22, 2026, challenged the IJ's decision not to grant Petitioner a bond hearing at all. *See Villatoro-Hernandez*, 2026 WL 1533054, at *1. On May 27, at Petitioner's bond hearing, the IJ denied

bond based on Petitioner's purportedly mandatory detention, offering as an alternative basis the conclusion that Petitioner was a flight risk. *See* Dkt. # 8-3 at 2–3. On June 1, a court in this District granted Petitioner's first petition, concluding that Petitioner was not subject to mandatory detention. *See generally Villatoro-Hernandez*, 2026 WL 1533054. The first habeas petition only encompassed the issue of mandatory detention. By contrast, Petitioner's second habeas petition does not address the initial mandatory detention conclusion. Rather, it contends that the IJ failed to comply with due process when she determined that Petitioner was a flight risk. *See* Dkt. # 1 ¶¶ 63–74. Petitioner could not have raised this claim in the first habeas petition, because the IJ had not yet issued her bond redetermination decision (finding that he was a flight risk) when that petition was filed on May 22. The second petition also addresses the IJ's conclusions in the written memorandum, which was issued on June 18, 2026, well after the conclusion of the first habeas petition. In short, because the current petition is not identical to the first and advances substantively different claims, the abuse of writ doctrine does not apply.

B. Prudential Exhaustion

Second, Respondents request that the Court deny the Petition because prudential exhaustion is required in his case. Dkt. # 7 at 5–7. Regarding habeas petitions, the exhaustion requirement is prudential rather than jurisdictional. *See Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Courts may require prudential exhaustion when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quoting *Noriega–Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir.2003)). But even when all three *Puga* factors obtain, the Court may waive prudential exhaustion if "administrative

remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez*, 872 F.3d at 988 (quoting *Laing* v. *Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

Petitioner contends that the *Puga* factors are not met, but that even if they were, exhaustion should be excused because his detention would continue beyond the period considered indefinite, resulting in irreparable harm. *See* Dkt. # 1 ¶¶ 53–62. Respondents argue in their return memorandum that the *Puga* factors favor enforcing the exhaustion requirement, but that even if it were not required, any resulting prolonged detention of Petitioner would not entitle him to its waiver. Dkt. # 7 at 5–7.

The parties cite authority supporting their positions on the exhaustion requirement. *See* Dkt. # 1 ¶ 60 (Petition, citing *W.T.M. v. Bondi*, 2026 WL 262583, at *2–3 (W.D. Wash. Jan. 30, 2026); *Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239, 1251–52 (W.D. Wash. 2025)); *see also* Dkt. # 7 at 6 (Return; citing *Martinez v. Scott*, 2025 WL 2689844, at *5 (W.D. Wash. Aug. 27, 2025), *report and recommendation adopted*, 2025 WL 2689066 (W.D. Wash. Sept. 19, 2025); *Kim v. Mullin*, 2026 WL 948347, at *4 (W.D. Wash. Apr. 8, 2026)).[3] Acknowledging that the authority supports either conclusion regarding exhaustion, the Court determines that the circumstances of this case warrants excusal under the *Laing* factors. Under *Laing*, the Court may waive an exhaustion requirement if "irreparable injury" would result from pursuing administrative remedies. *See Laing*, 370 F.3d at 1000.

---

[3] In *Zuo v. Hermosillo*, this Court determined that the *Puga* factors favored requiring exhaustion. 2026 WL 809882, at *1 (W.D. Wash. Mar. 24, 2026). The Court based its conclusion on the fact that the record was undeveloped, and so "further proceedings in the immigration court preclude the need for judicial review." *Id.* at *2. Not so here, where the IJ has issued a written memorandum outlining the reasons for the bond denial and the record is developed.

Here, irreparable injury would result in the form of prolonged detention. Petitioner has been detained since April 21, 2026. Dkt. # 10 ¶ 10. Petitioner points to statistics that the BIA takes over six months to resolve custody appeals. Dkt. # 1 ¶ 59 (citing *Rodriguez Vazquez*, 802 F. Supp. 3d at 1307 ("In 2024, EOIR data showed an average processing time of 204 days for bond appeals.")). In other immigration enforcement contexts, detention periods greater than six months are considered indefinite and "presumptively unreasonable," forcing the government to justify a noncitizen's continued detention. *See Zadvydas v. Davis*, 533 U.S. 678, 701–02 (2001). Analogously, waiting for the BIA's resolution of his appeal would risk an indefinite extension of his detention. Many courts in this District and in the Ninth Circuit have determined that this basis warrants waiver of the prudential exhaustion requirement. *See, e.g.*, *Soriano v. Hernandez*, __ F. Supp. 3d __, 2026 WL 969764, at *4 (W.D. Wash. Apr. 10, 2026) (Estudillo, C.J.) ("[G]iven the lengthy delays inherent in the current appeals process, the Court finds Petitioner will suffer irreparable injury if he is required to wait for a BIA decision before being permitted to file a habeas claim."); *Scott v. Wamsley*, 2025 WL 3514304, at *4 (W.D. Wash. Dec. 8, 2025), *reconsideration denied*, 2026 WL 83971 (W.D. Wash. Jan. 12, 2026) ("[c]ourts in this Circuit have regularly waived exhaustion requirements for noncitizens who face 'irreparable injury' from being detained for 'months without a bond hearing, and where several additional months may pass before the BIA renders a decision on a pending appeal.'" (citing *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 962 (N.D. Cal. 2019)); *Escalante Perez v. Hernandez*, 2026 WL 1004559, at *2 (W.D. Wash. Apr. 14, 2026) (finding that petitioner would suffer irreparable injury without waiver of prudential exhaustion). Accordingly, the Court determines that Petitioner has demonstrated that his case warrants waiver of the prudential exhaustion requirement, assuming it were to apply. *Cf. Shklyarevsky v. Ice Field Off. Dir.*, 2026 WL

1801029, at *2 (W.D. Wash. June 23, 2026) (Chun, J.) (concluding waiver under *Laing* "assuming all three *Puga* factors favor requiring exhaustion").

C. Bond Hearing

The Court now turns to the merits of the Petition. In her written memorandum, the IJ found that Petitioner had "failed to meet his burden of proof that he is not a flight risk." Dkt. # 8-4 at 4. The parties agree that this Court has jurisdiction to review bond determinations for constitutional claims and clear legal error. Dkt. # 1 ¶ 44; Dkt. # 7 at 7; *see Martinez v. Clark*, 124 F.4th 775, 781–82 (9th Cir. 2024); *see also Soriano*, __F. Supp. __, 2026 WL 969764, at *2–3.

"The habeas court's review of an immigration judge's determination of flight risk is for abuse of discretion." *Soriano*, 2026 WL 969764, at *4 (citing *Martinez*, 124 F.4th at 784–85; *Anyanwu v. Bondi*, 2025 WL 3466910, at *4 (W.D. Wash. Oct. 6, 2025), *report and recommendation adopted*, 2025 WL 3187485 (W.D. Wash. Nov. 14, 2025)). "Under an abuse of discretion standard, '[a district court] cannot reweigh evidence . . . [but] can [only] determine whether the BIA applied the correct legal standard.'" *Martinez*, 124 F.4th at 785 (citation modified) (considering "dangerousness"); *see id.* at 783 ("Even though what constitutes 'dangerousness' is malleable and involves agency discretion, . . . this is still a legal standard so long as federal courts can assess whether an IJ correctly applied the statutory standard to a given set of facts."); *see also Lopez Reyes v. Bonnar*, 2018 WL 7474861, at *8 (N.D. Cal. Dec. 24, 2018) ("where the IJ misinterpreted or failed to consider probative evidence, the Court may review such errors under its habeas review.").

In determining whether a Petitioner is a flight risk, the IJ may consider the following factors:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006); *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 805 (BIA 2020). Additionally, the IJ "may consider the likelihood that relief from removal will be granted in determining whether an alien warrants a bond." *Matter of R-A-V-P-*, 27 I. & N. Dec. at 805. The IJ's written memorandum recites this standard, Dkt. # 8-4 at 4, and Respondents cite it in their return. Dkt. # 7 at 9.

At the bond hearing, Petitioner argued that he was not a flight risk because he does not have a criminal history or any history of violent behavior, had lived in the U.S. for 20 years, has a citizen son attending university, and did not resist arrest. *See* Dkt. # 1-2 ¶ 5 (sworn declaration of Petitioner's counsel, present at the bond hearing). The government confirmed he had no criminal history or history of dangerous behavior. *Id.* ¶ 8. But the government apparently stated that Petitioner was a flight risk because of "limited relief." *Id.* ¶ 7. Respondents' briefing does not address what the government meant when it stated that at the bond hearing. It appears from the record that the IJ found that Petitioner could be a flight risk because his son is of adult age. *Id.* ¶ 9 ("The Judge stated that, for [Petitioner]'s case, hardship for cancellation of removal purposed would be limited regarding [Petitioner]'s son"). The written memorandum of decision reinforces this reading: It states that Petitioner could "apply for cancellation of removal as a nonpermanent resident but his qualifying relative is healthy and he would have challenges demonstrating the hardship standard. His son is age 19 and cannot convey any immigration

status through adjustment at this time." Dkt. # 8-4 at 4. This is the only basis by which the IJ found that Petitioner is a flight risk.

The Court's analysis turns on the application of the standard, not a recitation of it. *Nat'l Res. Def. Council, Inc. v. Pritzker*, 828 F.3d 1125, 1135 (9th Cir. 2016) ("An agency acts contrary to the law when it gives mere lip service or verbal commendation of a standard but then fails to abide the standard in its reasoning and decision."). And the record before the Court shows that the IJ did not properly apply the flight risk standard.

As shown above, the IJ's determination that Petitioner was a flight risk because of his apparently poor prospects of relief from removal appears to have been the prime—indeed, the singular—ground that the IJ used in determining that Petitioner was a flight risk. *See* Dkt. # 8-4 at 4. But a petitioner's supposedly weak claims for relief from removal cannot by itself justify a finding of flight risk without explaining how this conclusion outweighs the other circumstances of their case.[4] *Soriano*, __ F. Supp. 3d __, 2026 WL 969764, at *5. In this case, the IJ listed the reasons that Petitioner gave for not being a flight risk, but "did not explain how the relative strengths or weakness of Petitioner's claim for relief [from removal] outweighed" that evidence. *Id.* In fact, Petitioner submitted evidence going to the second, third, fifth, sixth, and eighth factors of *In re Guerra*. *See* Dkt. # 1-3 at 3–5 (written submission); Dkt. # 1-2 ¶ 5. The IJ's decision recites this evidence, but in no way applies the standard to weigh it against her conclusion that he faced poor prospects of relief from removal. In brief, the record simply does not support Respondents' contention in the return memorandum that the "IJ relied on factors expressly contemplated by [*In re*] *Guerra* and subsequent precedent." Dkt. # 7 at 9. Because the

[4] Further, the record before the Court does not show that the government made any showing before the IJ that Petitioner would fail to appear, and speculation alone is not enough to satisfy the clear and convincing standard. *See Calderon-Rodriguez v. Wilcox*, 374 F. Supp. 3d 1024, 1033 (W.D. Wash. 2019) ("The clear and convincing evidence standard is a high burden and must be demonstrated in fact.").

IJ failed to properly apply the flight risk standard, the IJ abused her discretion and habeas relief must be granted. *See Perez Velasquez v. Bondi*, 2026 WL 1042479, at *6 (S.D. Cal. Apr. 16, 2026) ("The IJ's failure to consider or apply any of the *Guerra* factors and decision to instead rely on three pieces of evidence that 'bear little if any relevance' to Petitioner's risk of flight . . . while seemingly ignoring all evidence in Petitioner's favor constitutes a misapplication of the legal standard to the facts").

D. Remedy

Petitioner requests immediate release. Dkt. # 1 at 19–20. Respondents are silent on the appropriate remedy but say that a permanent injunction is not warranted because Petitioner has not made the necessary showing. *See* Dkt. # 7 at 10. To be clear, Petitioner has not requested a permanent injunction. *See* Dkt. # 1 at 19–20. In any event, federal courts have "a fair amount of flexibility" in fashioning specific habeas relief. *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005). Under similar facts, even absent the conditions of confinement alleged by Petitioner, this jurisdiction has found no basis for similarly situated petitioners to continue to be detained. *See Soriano*, 2026 WL 969764, at *6 (ordering immediate release); *Vasquez Lopez v. Hernandez*, 2026 WL 984151, at *3 (W.D. Wash. Apr. 13, 2026) (same); *W.T.M.*, 2026 WL 262583, at *5 (same); *see also Garcia v. Hyde*, 817 F. Supp. 3d 112, 131 (D.R.I. 2025) (ordering habeas petitioner's immediate release from custody "[g]iven the due process violations that pervaded his bond hearing[.]"); *Miri v. Bondi*, 2026 WL 622302, at *12 (C.D. Cal. Mar. 5, 2026) (ordering habeas petitioner's immediate release after finding immigration judge abused discretion in denying petitioner's request for bond at the bond determination hearing). Moreover, this Court has generally not required habeas petitioners to show the propriety of permanent injunction when seeking release under habeas. *See, e.g.*, *Shklyarevsky*, 2026 WL 1801029, at *4 (similar fact pattern); *Mahashin v. Hernandez*, 2026 WL 1733519, at *4–5(W.D. Wash. June 16, 2026)

(same). The Court finds the same here, and thus the appropriate remedy is for Petitioner to be immediate released with reasonable conditions of supervision.

## IV

## Conclusion

For these reasons, the Court GRANTS the habeas petition (Dkt. # 1) and ORDERS as follows:

(1) Respondents shall release Petitioner from detention within 24 hours of this order. Upon release, Petitioner shall be subject to reasonable conditions of supervision.

(2) Respondents and their respective officers, agents, employees, attorneys, and other persons acting on their behalf are prohibited from re-detaining Petitioner unless and until he is provided with adequate notice and a hearing before an immigration court to determine whether re-detention is appropriate.

(3) Petitioner requested attorney fees and costs under the Equal Access to Justice Act. *See* 28 U.S.C. § 2412(d)(l)(A). To be eligible for fees under the EAJA, a petitioner must submit an application within 30 days of final judgment. *See id*. § (d)(l )(B). Accordingly, Petitioner may file a motion with such request no later than July 16, 2026.

(4) The Clerk is DIRECTED to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 23rd day of July, 2026.

John H. Chun
John H. Chun
United States District Judge